STATE OF LOUISIANA IN     *     NO. 2021-CA-0516
THE INTEREST OF C.H.

        *

                COURT OF APPEAL

        *

                FOURTH CIRCUIT

        *

                STATE OF LOUISIANA

* * * * * * *

APPEAL FROM
JUVENILE COURT ORLEANS PARISH
NO. 2020-069-06-DQ-A, SECTION "A"
Honorable Clinton Smith, Judge
* * * * * *
**Judge Dale N. Atkins**
* * * * * *

(Court composed of Judge Daniel L. Dysart, Judge Joy Cossich Lobrano, Judge Dale N. Atkins)

Katherine M. Franks
LOUISIANA APPELLATE PROJECT
P.O. Box 220
Madisonville, LA 70447

       COUNSEL FOR DEFENDANT/APPELLANT

Jason Rogers Williams, District Attorney
G. Benjamin Cohen, Chief of Appeals
Brad Scott, Assistant District Attorney
ORLEANS PARISH DISTRICT ATTORNEY
619 S. White Street
New Orleans, LA 70119

       COUNSEL FOR THE STATE OF LOUISIANA/APPELLEE

                                  **AFFIRMED**
                            **January 26, 2022**

*DNA*

*DLD*

*JCL*

This is a juvenile delinquency case. The juvenile, C.H.,[1] was adjudicated as delinquent for the offense of unauthorized use of a motor vehicle, in violation of La. R.S. 14:68.4. The Orleans Parish juvenile court's July 30, 2021 disposition committed C.H. to the custody of the Office of Juvenile Justice ("OJJ") for twelve months, with all twelve months suspended, and C.H. was placed on a twenty-four month period of probation. On appeal, C.H. contends that the disposition is illegally excessive. For the reasons that follow, we affirm the juvenile court's disposition.

## FACTUAL BACKGROUND

On February 16, 2020, a Toyota Tundra truck ("truck") was taken from an apartment complex located at 3401 Garden Oaks Drive in Algiers, Louisiana, in Orleans Parish. That same day, the owner of the truck, E.G., reported it stolen, and the New Orleans Police Department ("NOPD") opened an investigation. Video recordings from the apartment complex's security camera captured two individuals

---

[1] Pursuant to the requirements of confidentiality of juvenile proceedings as set forth in La. Ch. Code Art. 412, as well as in Uniform Rules, Courts of Appeal, Rules 5-1 and 5-2, the juvenile, who was fourteen at the time of the charged offense and fifteen at the time the State charged him with the offense, is referred to by his initials only, C.H.

1

take the truck from the apartment complex's parking lot at approximately 6:00 a.m. C.H. was identified as one of the individuals involved in the theft of the truck.

Detective Marcus Dubuclet ("Detective Dubuclet") of NOPD was assigned to lead the investigation into the theft of the truck. Detective Dubuclet received notice from a fellow detective that the apartment complex had security camera video footage of the theft of the truck. Accordingly, Detective Dubuclet contacted the apartment complex, reviewed the footage, and asked the apartment complex's manager to download the footage onto a disk, which he collected as evidence and brought to NOPD's Central Evidence and Property Section.

Thereafter, on March 1, 2020, deputies from the Jefferson Parish Sherriff's Office ("JPSO") stopped the truck in Jefferson Parish and detained two individuals that were in the truck. Detective Dubuclet contacted one of the JPSO deputies, Deputy Kenneth Bonura ("Deputy Bonura"), who was involved in the recovery of the truck and the detaining of the individuals. Detective Dubuclet showed the apartment complex footage to Deputy Bonura, who identified the two individuals in the footage as the same two individuals that he detained when he stopped the truck on March 1, 2020. Deputy Bonura identified one of the two individuals as C.H.

## PROCEDURAL HISTORY

### March 9, 2020 Petition

On March 9, 2020, the State of Louisiana ("State") filed a delinquency petition ("Petition"), which alleged that C.H. committed one count of the offense of theft of a motor vehicle in violation of La. R.S. 14:67.26[2] on February 16, 2020,

_____

[2] Louisiana Revised Statutes 14:67.26 is titled "Theft of a motor vehicle," and it provides, in pertinent part:

2

at approximately 6:00 a.m. at 3401 Garden Oaks Drive in Algiers, Louisiana, in Orleans Parish. In particular, the Petition alleged that C.H. "[took] a Toyota Tundra, which belongs to E.G., without the consent of the owner, with the intention to permanently deprive the owner of the motor vehicle." According to the Petition, C.H. was fourteen years old on the date of the charged offense and fifteen years old at the time he was detained and on the date of the filing of the Petition.

***March 9, 2020 Continued Custody Hearing, Judgment, and Release Order***

Additionally, on March 9, 2020, the juvenile court conducted a continued custody hearing. According to the March 9, 2020 judgment issued by the juvenile court after the hearing, counsel for C.H. stipulated to the charge of theft after reviewing the police report and warrant. That March 9, 2020 judgment ordered the State to screen the matter for diversion status. Further, the judgment noted that C.H. tested positive for marijuana on the date of the hearing. In the March 9, 2020 judgment, the juvenile court also set the matter for an appearance to answer on March 26, 2020.

---

A. Theft of a motor vehicle is the intentional performance of any of the following acts:

(1) The taking of a motor vehicle, which belongs to another, either without the owner's consent or by means of fraudulent conduct, practices, or representations, with the intention to permanently deprive the owner of the motor vehicle; or

(2) The taking control of a motor vehicle that is lost or mis-delivered under circumstances which provide a means of inquiry as to the true owner, and the person in control of the motor vehicle does not make reasonable efforts to notify or locate the true owner; or

(3) The taking control of a motor vehicle when the person knows or should have known that the motor vehicle has been stolen.

On the same day of the continued custody hearing, counsel for C.H. filed a "Motion for Release," in which counsel requested that the juvenile court release C.H. to the custody of his mother. The juvenile court signed the "Release Order" on March 9, 2020, which ordered the Juvenile Justice Intervention Center to immediately release C.H. to the custody of his mother. Along with the Release Order, the juvenile court judge signed an "Order Setting Conditions of Release." In the Order Setting Conditions of Release, the juvenile court ordered C.H. to participate in the Men Engaging in Leadership & Opportunity Works program (MELOW); to continue his education; and to not possess a firearm, knife, or other weapon. Like the March 9, 2020 judgment, the Order Setting Conditions of Release also noted that C.H.'s next appearance would be the answer hearing scheduled for March 26, 2020.

***March 11, 2020 Amended Petition***

Prior to the scheduled answer hearing, the State filed an "Amended Petition" on March 11, 2020. In the Amended Petition, the State changed the underlying offense alleged to have been committed by C.H. to one count of unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4.[3] Specifically, the Amended Petition stated that C.H. committed the offense of "the intentional taking or use of a Toyota Tundra belonging to another, either without the owner's consent or by means of fraudulent practice or representations, but without any intent to

---

[3] Louisiana Revised Statutes 14:68.4 defines "[u]nauthorized use of a motor vehicle" as "the intentional taking or use of a motor vehicle which belongs to another, either without the other's consent, or by means of fraudulent conduct, practices, or representations, but without any intention to deprive the other of the motor vehicle permanently."

permanently deprive" the owner. Thereafter, as noted previously, the matter was scheduled for an answer hearing on March 26, 2020.

***COVID-19 Delays; June 18, 2020 Answer Hearing; and June 19, 2020 Judgment***

Thereafter, the COVID-19 pandemic delayed this matter in the juvenile court. On March 18, 2020, the juvenile court issued the "COVID-19 Public Health Emergency Case Reset Order." The March 18, 2020 Order stated that the juvenile court found good cause, namely the COVID-19 pandemic, to extend the trial deadlines found in La. Ch. Code art. 854;[4] so, the juvenile court vacated the answer hearing date of March 26, 2020, and reset the matter for April 27, 2020.

However, on April 27, 2020, the juvenile court issued another "COVID-19 Public Health Emergency Case Reset Order" and again found good cause due to the COVID-19 pandemic to extend the trial deadlines in La. Ch. Code art. 854. In the April 27, 2020 Order, the juvenile court vacated the April 27, 2020 hearing date and reset the matter for June 18, 2020.

The juvenile court conducted the answer hearing via Zoom video-conferencing on June 18, 2020. According to the judgment signed on June 19, 2020, at the hearing, C.H. entered a denial to the charged offense of one count of

---

[4] Louisiana Children's Code Article 854 provides the following deadlines for an appearance to answer a petition:

A. If the petition is filed prior to or during the hearing to determine continued custody, the court may order the child to answer the petition upon completion of the hearing. If not so ordered and the child is continued in custody, he shall be ordered to appear to answer the petition within five days after the filing of the petition.

B. In all other cases, the child shall be ordered to appear to answer the petition within fifteen days after the filing of the petition.

C. For good cause, the court may extend such period.

unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4. Further, in the June 19, 2020 judgment, the juvenile court set the matter for a pre-hearing conference on August 6, 2020.

### *Pre-Hearing Conferences*

The juvenile court conducted the August 6, 2020 pre-hearing conference via Zoom video-conferencing. According to the judgment signed on August 7, 2020, as of the date of the pre-hearing conference, counsel for C.H. had not yet obtained outstanding discovery from the State. Accordingly, the juvenile court reset the matter for September 10, 2020. The August 7, 2020 judgment stated that counsel for C.H. waived the La. Ch. Code art. 877(B) deadlines for conducting an adjudication hearing and that the juvenile court found good cause to extend those deadlines.[5]

The juvenile court again found good cause to extend the La. Ch. Code Art. 877(B) deadlines at pre-adjudication hearing conferences conducted via Zoom video-conferencing on September 10, 2020, according to the September 11, 2020 judgment; on October 1, 2020, according to the October 9, 2020 judgment; and on February 8, 2021, according to the February 8, 2021 judgment. In the February 8, 2021 judgment, the juvenile court set the matter for an adjudication hearing on May 24, 2021.

---

[5] Louisiana Children's Code Article 877(B) states that "[i]f the child is not continued in custody, the adjudication hearing shall commence within ninety days of the appearance to answer the petition."

6

*May 24, 2021 Adjudication Hearing*

On May 24, 2021, the juvenile court conducted the adjudication hearing. The juvenile court heard testimony from Detective Dubuclet of NOPD and from Deputy Bonura of JPSO.

**Testimony of Detective Dubuclet**

The State called as a witness Detective Dubuclet of NOPD. Detective Dubuclet testified that on February 16, 2020, he was assigned to NOPD's Fourth District's investigative unit and was responsible for conducting follow-up investigations for all automobile thefts in that district. He testified that on February 16, 2020, he received an auto theft affidavit completed by the owner of a Toyota Tundra truck and began investigating the incident. Detective Dubuclet testified that he received notice from a fellow detective, whom he identified as Detective Rainey, that the apartment complex from which the truck was stolen had security camera video footage of the theft.

Detective Dubuclet testified that he subsequently contacted management at the apartment complex; reviewed the apartment complex security camera video footage; and received a disk with the apartment complex security camera video footage downloaded on it from the apartment complex's manager. He collected the disk with the apartment complex security camera video footage as evidence and brought the disk to NOPD's Central Evidence and Property Section. Counsel for the State then showed a disk to Detective Dubuclet, and he identified the disk as the one with the apartment complex security camera video footage that he collected as evidence in this matter. The juvenile court admitted the disk into evidence.

Next, Detective Dubuclet testified that during the course of his investigation, he learned that on March 1, 2020, JPSO located the truck in Jefferson Parish. He testified that he contacted the primary JPSO Deputy, Deputy Bonura, who stopped the truck. Detective Dubuclet further testified that he showed Deputy Bonura the apartment complex security camera video footage and asked him whether he was familiar with the individuals in the footage. Detective Dubuclet testified that "[w]ithout hesitation" Deputy Bonura identified the two individuals seen in the apartment complex security camera footage, one of whom he named as C.H.

Detective Dubuclet testified that he further confirmed Deputy Bonura's identification with photographs. He explained:

> So the process we have after receiving that, it's a two-step process. You get a[n] identification of [a] subject once they're identified. The next step in that process is to get confirmation photos to verify that the person that you're saying that you saw or that you've identified is the person that's on this photograph. So through databases that we have at [NOPD], I was able to obtain two photographs of the individuals that were positively identified by Deputy Bonura. And, at that point, I presented those two photographs to him and he identified both subjects respectively.
>
> . . . .
>
> Confirmation photos are only issued if the reported person, the victim, or the witness, has direct knowledge, that that person can identify them by first name or date of birth. It can't be third party. If they have first-party knowledge of that individual, that's the only way we get confirmation photos.

Detective Dubuclet testified that Deputy Bonura again identified C.H. and the other individual in the confirmation photographs presented to him and signed and dated the back of the confirmation photographs to "verify that nothing was fabricated and those signatures and times were authenticated by that person who identified them." Counsel for the State then showed two photographs to Detective Dubuclet, who identified them as the confirmation photographs that Deputy

8

Bonura signed during the identification process. The juvenile court admitted these confirmation photographs into evidence. In his testimony regarding the identification process, Detective Dubuclet stated that, after he showed the confirmation photographs to Deputy Bonura, Deputy Bonura further explained that C.H. was in the front passenger seat when Deputy Bonura stopped the truck on March 1, 2020.

Detective Dubuclet testified that, after he received the positive identification from Deputy Bonura, he obtained an arrest warrant for C.H., though he was not personally involved in arresting C.H.

**<u>Testimony of Deputy Kenneth Bonura</u>**

Next, the State called Deputy Bonura of JPSO. Deputy Bonura testified that on March 1, 2020, JPSO employed him in the patrol division. He testified that, on that day, he located and stopped a Toyota Tundra truck that had been reported stolen in Orleans Parish. In particular, Deputy Bonura testified that he "stopped in front of the [truck] to prevent [it] from fleeing, and another deputy stopped directly behind it." He testified that "The driver got out and fled across Berhman Highway into a parking lot where he was detained. And [C.H.] exited the passenger seat when [another deputy] approached from behind and ordered him to the ground. And he was detained right there near the passenger side of the [truck]."

Deputy Bonura testified that after he seized the truck and took the two individuals into custody, Detective Dubuclet subsequently contacted him and "was able to show [him] the [apartment complex security camera] video [footage] and some [confirmation] photos of them which [he] immediately recognized to be the two subjects [the deputies] arrested" on March 1, 2020. During his testimony, Deputy Bonura identified C.H. by name as one of those two individuals, and he

9

testified that C.H. was wearing the same clothes in the apartment complex security camera video footage as he was on March 1, 2020, when the deputies detained him. Counsel for the State played the apartment complex security video footage for Deputy Bonura, whereupon he testified that "[t]he subject in the black hoody, the shorter one with the twist in his hair, he was the driver that day. And the subject with the jacket that has a gray hoody with the white sleeves and the white-blue pants is [C.H.] that day in the passenger seat." When counsel for the State showed two photographs to Deputy Bonura, he identified them as the confirmation photographs that he had signed; identified C.H. in one of the confirmation photographs; and also identified C.H. in the courtroom.

After the hearing, the juvenile court issued a judgment on May 24, 2021, which provided that the matter was taken under advisement.

### May 27, 2021 Judgment of Adjudication

On May 27, 2021, after taking the matter under advisement, the juvenile court issued its judgment regarding C.H.'s adjudication. The juvenile court adjudicated C.H. to be delinquent as a result of having committed one count of unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4 on February 16, 2020.

Additionally, in the May 27, 2021 judgment, the juvenile court ordered OJJ to conduct a pre-disposition investigation ("PDI") and to return its findings in a report to the court no later than June 20, 2021. The court scheduled a disposition hearing for June 24, 2021.

*Pre-Disposition Report*

On July 21, 2021,[6] OJJ submitted the PDI Report to the juvenile court. The PDI Report noted, in pertinent part, that C.H. suffered a traumatic experience the prior year when his brother was killed. The PDI Report summarized an interview with C.H.'s mother who stated that C.H. does not go to friends' houses or have friends over to visit. Regarding C.H.'s reaction to difficult situations and his ability to cope with stress, C.H.'s mother commented that "[C.H.] tends to not say anything and hold[s] a lot of his emotions in." However, C.H.'s mother also noted that C.H. could turn to his father, grandfather, and mother's boyfriend for trust, support, and help. She commented that C.H. is "[g]oal oriented" and a "good role model to his younger siblings."

The PDI Report also summarized an interview with C.H., who stated that the subject offense was an impulsive act at a time when he was under the influence of marijuana. C.H. also stated that he occasionally uses marijuana. The PDI Report noted an impression of remorse from C.H. regarding the subject offense. C.H. expressed that he had a job, at which he worked approximately thirty hours per week. Additionally, C.H. stated that "his father is a good person to talk to" and that when he needs help he goes to his mother "because she is closest and he can depend on her." C.H. also noted that he played football and basketball at school and spent time with his cousin and brother.

---

[6] In the May 27, 2021 judgment, the juvenile court ordered OJJ to submit the PDI Report by June 20, 2021, in advance of the scheduled June 24, 2021 disposition hearing; however, according to the record, OJJ did not receive the May 27, 2021 judgment. Accordingly, on June 24, 2021, the juvenile court issued another judgment, which ordered OJJ to complete the PDI Report within thirty days and reset the disposition hearing for July 29, 2021.

Additionally, the PDI Report contained a section summarizing a Structured Assessment of Violence Risk in Youth (SAVRY), which was used to assist in estimating the risk of future re-offending and violence for C.H. The PDI Report showed that C.H.'s SAVRY risk rating was moderate and identified social/contextual risk factors in stress and poor coping; individual/clinical risk factors in substance-use difficulties; and protective factors in pro-social involvement, strong social support, and strong attachments and bonds. The results of the SAVRY findings were that C.H. would benefit from counseling from the Children's Bureau to learn stress and coping skills and from random toxicology screens to address his substance use. In the recommendations section, the PDI Report recommended that C.H. receive community supervision. Additionally, the PDI Report stated that OJJ would make referrals to address C.H.'s substance abuse, mental health, and peer relations.

*July 29, 2021 Disposition Hearing*

After receiving the PDI Report, the juvenile court conducted the disposition hearing on July 29, 2021. At the hearing, Frederick Smith of OJJ testified about the PDI Report and summarized that "based on the information we had, we thought that probation would be suitable for [C.H.] and we would set up services to address substance abuse, peers, and trauma."

After Mr. Smith's testimony, the juvenile court addressed C.H. and verbally stated the disposition:

> I had a chance to review the [PDI] [R]eport prepared by [OJJ]. I am actually pleased to learn of the support that you have from your mother as well as your father. I think that is very, very important, and that factors into my comfort level in making my decision. I am especially pleased that you have expressed some remorse in being involved in the situation that you were in, and that you don't want to place yourself in that situation again. That is really, really important.

12

. . . .

I'm pleased that [you are] working a job. I think that's important. I'm also pleased that you're involved in sports, and I wish you continued success. But I also need you to understand that you have to be careful with what you do and who [you] hang out with and the situations that they may place you in. Now, allegedly in this situation, you either did not know this car was stolen or you knew and decided anyway to get in the car with these guys. Either way, you can't do that anymore.

. . . .

I need you to understand that you are being given a second opportunity here. But I also need you to understand that when you violate laws and rules, that there are consequences.

So my judgment in this case is as follows: I am going to sentence you to one year of detention. I'm going to suspend that detention, but I'm also going to order you to participate in two years of active probation. And that probation will allow you to get the services, the support, and anything else that you need, as Mr. Smith was referencing when he first spoke.

. . . .

So I want you to work with Mr. Smith and the folks with OJJ. I will continue to see you for the next couple of years. We'll get together on occasion and talk about how things are progressing, see if we need to change anything. But please know that if you get into a problem as you did before, because that year is suspended, you can still be placed in detention.

In sum, the juvenile court imposed a disposition of twelve months detention with OJJ but suspended that portion of the disposition. The juvenile court also imposed a twenty-four month period of probation. Additionally, the juvenile court explained that C.H. would occasionally return to the court for a review of his progress.

After the juvenile court orally announced the disposition, counsel for C.H. did not object to the disposition. However, C.H.'s father questioned the "severity of the" disposition and referred to it as a "harsh punishment." In response, the juvenile court explained that OJJ and the juvenile court would revisit the

disposition in the future after determining whether "[C.H.] fully understands and appreciates the gravity or the potential gravity of what he was involved in . . . ." The juvenile court then asked Mr. Smith an initial time frame for working with C.H., to which Mr. Smith responded, "[s]ixty days." Given that time frame, the juvenile court asked the parties to return on October 19, 2021, for a review of C.H.'s progress in probation.

***July 30, 2021 Judgment of Disposition***

On July 30, 2021, the juvenile court signed a written judgment of disposition in accord with the disposition that the juvenile court verbally announced at the July 29, 2021 hearing. The July 30, 2021 judgment provided:

> The above-captioned matter appeared via Zoom court post-adjudication for an Unauthorized Use of a Motor Vehicle charge for a Disposition Hearing this date.
>
> [PRESENT: Assistant District Attorney: Aaron Coffey
> Louisiana Center for Children's Rights: Michael H. Grey, Jr.
> Juvenile: Present
> [Juvenile's Mother]: Present
> Youth and Family Specialist: Beverly Durand
> OJJ Probation and Parole Officer: Frederick Smith]
>
> Considering the information provided to the Court on this date, let the Record reflect the following:
>
> The youth, [**C.H.**], and his mother [] are present today via Zoom court. Based on Officer Smith's interview with the youth and his family who conducted a [PDI], he reported to the Court that the youth's mother stated she has not had any problems with her son at home and does not have any concerns as far as friends currently. The youth is in the tenth grade and has no history of suspensions, expulsions, fighting in school, mental health concerns, or history of hospitalizations or self-harm. The family did suffer a loss for which the youth would be referred to Children's Bureau for trauma counseling. . . . He is currently working . . . about 30 hours per week. OJJ feels that probation is suitable for the youth and would be provided services to address substance abuse, peers, and trauma.

**DISPOSITION**

14

Based on the foregoing, the Court hereby orders the following:

**IT IS ORDERED, ADJUDGED AND DECREED** that,

as to COUNT 1, R.S. 14:68.4, Unauthorized Use of a Motor Vehicle, the Court hereby sentences the youth, [**C.H.**], to the custody of [OJJ] for twelve (12) months of detention, which sentence is suspended. The youth is placed on twenty-four (24) months' **ACTIVE PROBATION**. This sentence is to run concurrent with any and all other sentences the youth may be serving.

The youth is ordered to comply with the following special conditions of probation:
1. The youth must attend school every day, present no problems at school or home, receive no suspensions, and forward copies of all report cards received to the Court.
2. The youth must have no further violations of the law.
3. The youth must have no drugs, alcohol, or weapons in HIS possession.
4. The youth is to cooperate and complete the conditions of OJJ.
5. The youth is to keep OJJ informed of current contact information at all times. Failure to do so may result in being held in contempt of court.

The Court waives all fines and fees.

**IT IS ORDERED, ADJUDGED AND DECREED** that this case is set for a Review of Probation and Parole Hearing.

NEXT DATE: OCTOBER 19, 2021 @ 9:30 a.m.
SET FOR: REVIEW OF PROBATION AND PAROLE HEARING

In sum, the July 30, 2021 judgment imposed a disposition of twelve months in the custody of OJJ, with all twelve months suspended, as well as twenty-four months of active probation. Further, the judgment set a "Review of Probation and Parole Hearing" on October 19, 2021, for the juvenile court to review C.H.'s progress.

C.H. appeals this July 30, 2021 judgment of disposition.

**DISCUSSION**

*STANDARD OF REVIEW*

In an appeal of a juvenile delinquency matter, the State Constitution requires the appellate court to review both the facts and the law. La. Const. Art. V § 10(B).

15

*See also State in Interest of C.R.*, 2019-0917, p. 6 (La. App. 4 Cir. 1/29/20), 290 So.3d 220, 224. As this Court has explained:

> Except as otherwise provided by the constitution, [an appellate court's] jurisdiction in civil cases extends to both law and facts; in criminal matters, it[s] criminal jurisdiction extends only to questions of law. La. Const. 1974, art. V, § 5C. Juvenile delinquency proceedings do not fall within the category of criminal prosecutions, as is evident from long established jurisprudence ..., and the special juvenile provision [of the La. Constitution]. Accordingly, since the constitution does not provide otherwise, the scope of review of this court in juvenile delinquency proceedings extends to both the law and the facts.

*State in Interest of C.R.*, 2019-0917, p. 6, 290 So.3d at 224 (quoting *State in the Interest of Batiste*, 367 So.2d 784, 788 (La. 1979)). Accordingly, our review of C.H.'s disposition will encompass both the facts and the law.

An appellate court reviews a juvenile court's disposition under the abuse of discretion standard of review. That is, "[a] sentencing court has 'wide discretion in the imposition of [a] sentence within statutory limits' and a sentence imposed 'should not be set aside as excessive in the absence of a manifest abuse of [its] discretion.'" *State in Interest of M.R.*, 2020-0347, p. 11 (La. App. 4 Cir. 10/5/20), 306 So.3d 479, 487 (quoting *State v. Sepulvado*, 367 So.2d 762, 767 (La. 1979)).

C.H. raises one issue on appeal, specifically whether the disposition was illegally excessive for a non-violent felony. Prior to addressing this issue, we discuss two pivotal preliminary matters. First, we address whether the issue of an excessive disposition was preserved for appeal. Second, we address this Court's responsibility to conduct an error patent review in juvenile delinquency proceedings.

16

*PRELIMINARY MATTERS*

*Failure to Object to Disposition*

It is undisputed that counsel for C.H. did not object to the sentencing disposition at the July 29, 2021 hearing when the juvenile court verbally announced C.H.'s disposition. Additionally, in briefing to this Court, counsel for C.H. acknowledges that failure to object.

The Louisiana Children's Code does not contain a provision regarding a juvenile's failure to assert a contemporaneous objection. However, La. Ch. Code art. 104 provides:

> Where procedures are not provided in this Code, or otherwise by law, the court shall proceed in accordance with:
>
> (1) The Code of Criminal Procedure in a delinquency proceeding and in a criminal trial of an adult.
>
> (2) The Code of Civil Procedure in all other matters.

*See also State ex rel. J.F.*, 2003-0321, p. 4 (La. App. 3 Cir. 8/6/03), 851 So.2d 1282, 1285. Regarding contemporaneous objections, the Code of Criminal Procedure provides:

> An irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence. A bill of exceptions to rulings or orders is unnecessary. It is sufficient that a party, at the time the ruling or order of the court is made or sought, makes known to the court the action which he desires the court to take, or of his objections to the action of the court, and the grounds therefor.

La. Code Crim. P. art. 841(A).

In both the Code of Criminal Procedure and jurisprudence interpreting it, "[i]t is well-settled that an irregularity or error, relating to 'the ruling or order of the court,' cannot be availed of after verdict unless it was objected to at the time of occurrence." *State v. Magrini*, 2019-0951, p. 25 (La. App. 4 Cir. 5/27/20), 301

17

So.3d 525, 540 (quoting *State v. Griffin*, 2015-0125, p. 22 (La. App. 4 Cir. 9/16/15), 176 So.3d 561, 574). The rationale behind the requirement of a simultaneous objection as found in La. Code Crim. P. art. 841(A) is that the contemporaneous objection provides the trial court with an opportunity to rule on the issue and to cure or prevent a potential error. *State v. Hampton*, 2019-0682, p. 13 (La. App. 4 Cir. 7/1/20), 302 So.3d 544, 551. Louisiana Code of Criminal Procedure Article 841(A) not only requires a contemporaneous objection but also that the party articulate the basis of the objection. *Magrini*, 2019-0951, pp. 25-26, 301 So.3d at 540 (quoting *Griffin*, 2015-0125, p. 23, 176 So.3d at 575). On appeal, argument is limited to those grounds raised at trial. *Id.* "A new basis for objection cannot be raised for the first time on appeal." *Id.*, 2019-0951, p. 26, 301 So.3d at 540.

However, La. Code Crim. P. art. 920, which pertains to the "[s]cope of appellate review," provides an exception to the contemporaneous objection rule of La. Code Crim. P. art. 841(A). *State v. Harris*, 44,402, p. 12 (La. App. 2 Cir. 6/24/09), 20 So.3d 1121, 1129. Louisiana Code of Criminal Procedure Article 920 states:

> The following matters and no others **shall** be considered on appeal:
>
> (1) An error designated in the assignment of errors; and
>
> (2) **An error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence**.

(Emphasis added). "This exception provides that an error patent, *i.e.*, '[a]n error that is discoverable by a mere inspection of the pleadings and proceedings and without inspection of the evidence,' shall be considered on appeal." *Harris*, 44,402, p. 12, 20 So.3d at 1129 (quoting La. C. Cr. P. art. 920(2)) (citing *State v.*

18

*Paben*, 43,415 (La. App. 2 Cir. 8/13/08), 990 So.2d 123). *See also State v. Webb*, 2014-0149, p. 26 (La. App. 3 Cir. 10/1/14), 149 So.3d 310, 327. Accordingly, appellate review is generally limited to issues for which there was a contemporaneous objection, unless the issue involves an error patent. Thus, C.H.'s assignment of error was not preserved for appeal unless it was an error patent.

***Error Patent Review***

Next, we address the second preliminary matter, namely whether a juvenile matter is entitled to an error patent review. The Louisiana Children's Code is silent as to whether a juvenile proceeding is entitled to an error patent review.

This Court has found that, when read together, La. Ch. Code art. 104 and La. Code Crim. P. art. 920 mandate such a review. *State in Interest of A.P.*, 2020-0623, p. 6 (La. App. 4 Cir. 4/21/21), 317 So.3d 887, 890. Therefore, this Court has adopted the practice of conducting an error patent review in juvenile delinquency cases. *State in Interest of W.B.*, 2016-0642, p. 4 (La. App. 4 Cir. 12/7/16), 206 So.3d 974, 978.

As noted, C.H. contends that his disposition constitutes an error patent because it is illegally excessive. This Court has held that an illegal disposition in a juvenile proceeding is deemed an error patent that can be considered and corrected on appeal even if counsel for the juvenile did not lodge a contemporaneous objection before the juvenile court. *State in Interest of M.R.*, 2020-0347, p. 4, 306 So.3d at 483; *State in Interest of J.T.*, 2011-1646, p. 24 (La. App. 4 Cir. 5/16/12), 94 So.3d 847, 862. *See also State in Interest of H.L.F.*, 1997-2651, p. 6 (La. App. 4 Cir. 5/20/98), 713 So.2d 810, 813; La. Code Crim. P. Art. 882 ("An illegal sentence may be corrected at any time by the court that imposed the sentence or by an appellate court on review."). Based upon jurisprudence and statutory law, we

19

conclude that this Court is authorized to review C.H.'s assignment of error regarding the alleged excessiveness of his disposition, despite the lack of a contemporaneous objection, because an excessive disposition in a juvenile matter is an error patent. Accordingly, we turn to consideration of whether the disposition imposed on C.H. is excessive.

## ASSSIGNMENT OF ERROR

As noted, C.H. asserts only one assignment of error, namely that the July 30, 2021 judgment of disposition is illegally excessive, and is an illegal sentence that constitutes an error patent. C.H. contends that this Court should remand the matter for a new disposition hearing.

## EXCESSIVE DISPOSITION

Having concluded that this Court is authorized to review C.H.'s assignment of error, we now address whether C.H.'s disposition is illegally excessive for a non-violent felony.

### Juvenile Dispositions

The Louisiana Children's Code provides the procedures and requirements for adjudicating juveniles as delinquents and for determining their disposition after such an adjudication. *State in Interest of C.P.G.*, 53,038, p. 5 (La. App. 2 Cir. 8/27/19), 278 So.3d 1095, 1098. The Louisiana Children's Code states that "[a]ll rights guaranteed to criminal defendants by the Constitution of the United States or the Constitution of Louisiana, except the right to jury trial, shall be applicable in juvenile court proceedings brought under [the Louisiana Children's Code]." La. Ch. Code Art. 808. *See also State in Interest of A.F.*, 2011-1437, p. 7, n. 4 (La. App. 4 Cir. 2/15/12), 2012 WL 4754159, *4. A juvenile has the same

constitutional right against excessive punishment as an adult. *State in Interest of N.S.*, 2020-01171, pp. 1-2 (La. 12/8/20), 305 So.3d 855, 855-56.

In juvenile matters, the sentence is referred to as a judgment of disposition. *See* La. Ch. Code art. 684. Louisiana Children's Code Article 901(B) provides, in pertinent part, that after a juvenile court adjudicates a child delinquent, "the court should impose the least restrictive disposition authorized by Articles 897 through 900 of [the Louisiana Children's Code] which the court finds is consistent with the circumstances of the case, the needs of the child, and the best interest of society." *See also State in Interest of D.T.*, 2019-1284, pp. 7-8 (La. App. 1 Cir. 2/21/20), 2020 WL 862311, *4. Accordingly, when a juvenile complains on appeal of an excessive disposition, the reviewing court must determine from the record whether the juvenile court imposed the least restrictive disposition authorized by La. Ch. Code Arts. 897 through 900 and consistent with the circumstances of the case, the child's needs, and society's best interest.

We begin our review of the record with an analysis of La. Ch. Code Art. 898, which provides the applicable disposition guidelines. Louisiana Children's Code Article 898 states, in pertinent part:

> A. Notwithstanding any other provision of law to the contrary, **no judgment of disposition shall remain in force for a period exceeding the maximum term of imprisonment for the felony forming the basis for the adjudication**. . .
>
> . . . .
>
> C. If a child is adjudicated delinquent for a felony-grade offense that is not a crime of violence as defined in R.S. 14:2 and is placed on probation:
>
> (1) **The duration of the probation shall not exceed eighteen months unless** all of the following conditions are met:

21

(a) **The child is brought in person before the court for a contradictory modification hearing, as provided in Article 909 et seq., before the lapse of the maximum duration of the initial eighteen-month probationary period. The hearing date shall be set by the court at the time of disposition.**

(b) **The court finds by clear and convincing evidence that continued probation is necessary for completion of the child's treatment.**

(2) If probation is continued beyond eighteen months, a contradictory modification hearing shall occur not less than every six months from the disposition. At any such hearing, if the court determines by clear and convincing evidence that extending the child's probation is not necessary to complete treatment, the child shall be released. The total duration of disposition shall not exceed the maximum provided in this Article.

(3) The provisions of this Paragraph may be waived at the time of disposition if the waiver is knowing, intelligent, and voluntary and made after the child is afforded an adequate and meaningful opportunity to consult with counsel.

(Emphasis added). Louisiana Children's Code Article 898(A) provides that "no judgment of disposition shall remain in force for a period exceeding the maximum term of imprisonment for the felony forming the basis for the adjudication." Accordingly, we turn to the law regarding the felony forming the basis of C.H.'s adjudication, namely unauthorized use of a motor vehicle.

## Statutorily Excessive Review: Custody Portion of C.H.'s Disposition

The juvenile court adjudicated C.H. delinquent for committing the felony offense of unauthorized use of a motor vehicle in violation of La. R.S. 14:68.4. C.H. asserts that his disposition is illegally excessive. Specifically, C.H. contends that his disposition is statutorily excessive per La. Ch. Code art. 898(B)[7] because

---

[7] Louisiana Children's Code Article 898(B) provides:

B. If a child is adjudicated delinquent for a felony-grade offense that is not a crime of violence as defined in R.S. 14:2 and is committed to the custody of the Department of Public Safety and Corrections pursuant to Article 897(D):

"[b]y the plain provisions of the statute, the one year term of incarceration imposed on C.H. is illegally excessive, even though C.H. is not committed at the present time." In response, the State counters that C.H.'s disposition complies with La. Ch. Code art. 898(A), which provides that a judgment of disposition for a juvenile shall not exceed the maximum term of imprisonment for an adult who commits the felony forming the basis of the adjudication. The State notes that the sentencing range for an adult offender for unauthorized use of a motor vehicle is zero to two years, so C.H.'s disposition of twelve months of detention with OJJ with all twelve months suspended does not exceed this.

The Louisiana Children's Code provides that a juvenile cannot receive a judgment of disposition for a period that exceeds the maximum term of imprisonment for the felony forming the basis of the juvenile's adjudication. La.

---

(1) The total duration of the commitment served shall not exceed nine months, including credit for time spent in secure detention prior to the imposition of the disposition unless all of the following conditions are met:

(a) The child is brought in person before the court for a contradictory modification hearing, pursuant to Article 909 et seq., before the lapse of the maximum duration of the initial nine-month commitment. The hearing date shall be set by the court at the time of disposition.

(b) The court finds by clear and convincing evidence that the child's treatment cannot be accessed and completed in a less restrictive setting.

(2) If the child's commitment is continued beyond nine months, a contradictory modification hearing shall occur on the date of the hearings scheduled as required by Article 906(B)(1). At any such hearing, the child shall be released unless the court determines by clear and convincing evidence that the child's treatment cannot be accessed and completed in a less restrictive setting. The total duration of disposition shall not exceed the maximum provided in this Article.

(3) The provisions of this Paragraph may be waived at the time of disposition if the waiver is knowing, intelligent, and voluntary and made after the child is afforded an adequate and meaningful opportunity to consult with counsel.

(4) The provisions of this Paragraph shall apply to all children in the custody of the office of juvenile justice on and after August 1, 2018. If a child in the custody of the office of juvenile justice on August 1, 2018, has not had a hearing scheduled pursuant to this Paragraph, the court shall schedule a hearing no later than September 30, 2018, and, if a child is eligible for a hearing, the hearing shall take place no later than October 30, 2018.

Ch. Code. art. 898(A). The felony forming the basis of C.H.'s adjudication is unauthorized use of a motor vehicle, which constitutes a violation of La. R.S. 14:68.4. Louisiana Revised Statutes 14:68.4 provides that the maximum sentence for unauthorized use of a motor vehicle is a fine of no more than five thousand dollars; imprisonment with or without hard labor for no more than two years; or both. Accordingly, C.H.'s disposition could not exceed a five thousand dollar fine, two years' imprisonment, or both.

The custody portion of C.H.'s disposition included twelve months of detention with OJJ, with all twelve months suspended. This disposition does not exceed the five-thousand dollar fine or two-year maximum term of imprisonment for the felony of unauthorized use of a motor vehicle, and, thus, does not violate La. Ch. Code art. 898(A) and La. R.S. 14:68.4. Therefore, the juvenile court's custody portion of C.H.'s disposition is not statutorily illegally excessive.

**Statutorily Excessive Review: Probation Portion of C.H.'s Disposition**

Next we consider the portion of C.H.'s disposition that imposed twenty-four months of active probation. C.H. contends that this portion of his disposition is illegally excessive because he was adjudicated delinquent for unauthorized use of a motor vehicle, which is not a crime of violence. Citing La. Ch. Code art. 898(C), he asserts that the maximum period of probation for a juvenile adjudicated delinquent for a non-violent crime is eighteen months. In response, the State also cites La. Ch. Code Art. 898(C) and argues that it allows a juvenile court to impose a probationary period of more than eighteen months for a non-violent felony if the juvenile court sets a contradictory modification hearing ("modification hearing") date at the same time of the disposition to assess the necessity of continued probation. The State contends that the juvenile court complied with La. Ch. Code

24

Art. 898(C) by setting October 19, 2021, as the date for a modification hearing on the same date, July 30, 2021, that the juvenile court rendered its judgment of disposition. Accordingly, the State submits that C.H.'s disposition is neither excessive nor illegal.

Louisiana Children's Code Article 898(C) sets forth the conditions for a juvenile's term of probation to exceed eighteen months: (1) the juvenile court must set the date of a modification hearing at the time of the juvenile's disposition; (2) the juvenile court must hold the modification hearing prior to the end of the initial eighteen month probationary period; and (3) the juvenile court must find by clear and convincing evidence that continued probation is necessary for completion of the child's treatment. We now address whether the juvenile court adhered to these three conditions in imposing a twenty-four month probation period as part of C.H.'s disposition.

Regarding the first requirement, the July 30, 2021 judgment of disposition set October 19, 2021, as the date for the modification hearing, which was listed in the judgment as a "Review of Probation and Parole Hearing." The scheduled modification hearing date was set within C.H.'s initial eighteen month probationary period. The juvenile court complied with the La. Ch. Code art. 898(C)(1)(a) requirement to set a date for a probation review hearing at the time of disposition, and the juvenile court set that hearing within the initial eighteen month probationary period.

Regarding the second and third requirements, the record in this matter was lodged with this Court on September 20, 2021, i.e., prior to the scheduled review hearing date of October 19, 2021. Thus, the record before this Court does not contain information regarding whether the juvenile court actually conducted the

Review of Probation and Parole Hearing on October 19, 2021, as scheduled, and, if so, whether the juvenile court found by clear and convincing evidence at that hearing that continued probation was necessary for C.H.'s treatment.

Therefore, based on the record before this Court as lodged on September 20, 2021, the juvenile court did not abuse its vast discretion in imposing a twenty-four month probation period, and the probation portion of C.H.'s disposition is not illegally excessive. Rather, the juvenile court complied with the requirement found in La. Ch. Code art. 898(C)(1) by setting the date for the probation review hearing at the time of disposition.

*CONSTITUTIONALLY EXCESSIVE REVIEW*

As noted previously, C.H. raises only one assignment of error on appeal, namely that his disposition is illegally excessive. We addressed C.H.'s assignment of error under our error patent review concerning whether his disposition is statutorily excessive because an illegal disposition in a juvenile proceeding is an error patent that can be considered and corrected on appeal even absent a contemporaneous objection before the juvenile court. *State in Interest of M.R.*, 2020-0347, p. 4, 306 So.3d at 483; *State in Interest of J.T.*, 2011-1646, p. 24 (La. App. 4 Cir. 5/16/12), 94 So.3d 847, 862; *State in Interest of H.L.F.*, 1997-2651, p. 6, 713 So.2d at 813; La. Code Crim. P. Art. 882. In the interest of justice, not under our error patent review, we also review C.H.'s disposition to determine if it is constitutionally excessive because a statutorily legal sentence can still be constitutionally excessive. *See State v. McKithern*, 2011-1402, p. 9 (La. App. 3 Cir. 5/2/12), 93 So.3d 684, 692 (holding that "where 'the interest of justice clearly requires otherwise,' an appellate court may consider an issue not submitted to the trial court"). *See also* Uniform Rules, Courts of Appeal, Rule 1-3 (providing that

26

"[t]he Courts of Appeal will review only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise").

We note that "[a]lthough a disposition is within the statutory limits, it can be constitutionally excessive if it is grossly out of proportion to the severity of the crime or is nothing more than the purposeless and needless imposition of pain and suffering." *State in Interest of M.S.*, 2020-0346, p. 14 (La. App. 4 Cir. 10/5/20), 306 So.3d 487, 497 (quoting *State in Interest of R.C.*, 2016-0966, p. 2 (La. App. 4 Cir. 12/28/16), 208 So.3d 962, 964-65). We do not find C.H.'s disposition to be grossly out of proportion to the severity of the offense committed or a needless imposition of pain and suffering. Rather, our review of the record, particularly the juvenile court's statements at the July 29, 2021 disposition hearing, reveals that the juvenile court carefully determined that the disposition imposed was the least restrictive disposition consistent with the circumstances of the case, the needs of C.H., and the best interest of society.

In particular, the transcript from the July 29, 2021 disposition hearing reveals that the juvenile court acknowledged C.H.'s strong familial relationships, job, and extracurricular activities; but the juvenile court noted concern that C.H. needed to understand the severity of his offense and that there are consequences for his actions so that C.H. hopefully avoids re-offending in the future. The juvenile court also noted in the July 30, 2021 judgment of disposition that the PDI Report from OJJ recommended C.H. receive trauma counseling to cope with the loss of his brother and that C.H. would benefit from a period of probation to receive services to address substance abuse, relationships with his peers, and trauma. In addition, the July 30, 2021 judgment of disposition allows for the juvenile court to

27

modify the disposition at any time to continue to ensure the least restrictive disposition for C.H. that is consistent with the circumstances of the case, C.H.'s needs, and the best interest of society.

In sum, we find that the juvenile court did not abuse its vast discretion and that C.H.'s disposition was not illegally excessive because it was neither statutorily nor constitutionally excessive.

## DECREE

For the foregoing reasons, the juvenile court's July 30, 2021 judgment, which imposed a disposition of twelve months of detention with the Office of Juvenile Justice with all twelve months suspended, as well as a twenty-four month period of probation, is affirmed.

**AFFIRMED**